IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
**NOT YET SCHEDULED FOR ORAL ARGUMENT**

---

CHEROKEE CONCERNED CITIZENS,

    Petitioner,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,

    Respondents.

No. 23-1096

---

## PETITIONER'S RESPONSE TO RESPONDENTS' MOTION FOR VOLUNTARY REMAND

In this proceeding, Petitioner Cherokee Concerned Citizens challenges an Environmental Protection Agency ("EPA") order authorizing Chevron USA ("Chevron") to produce millions of tons of new chemicals derived from plastic waste at its Pascagoula, Mississippi, refinery despite EPA's findings that the chemicals pose extreme risks of cancer and other irreversible health harms. *See* Pet'r's Proof Opening Br. 1, ECF No. 2053884 ("Pet'r's Br."); EPA, *TSCA Section 5 Order for a New Chemical Substance*, at i, attach. to Petition for Review, ECF No. 1994141 (the "Order"). Cherokee Concerned Citizens' members live approximately one mile from Chevron's Pascagoula refinery. Second Decl. of Barbara Weckesser ¶ 3 *in* Add. to Pet'r's Proof Opening Br., ECF No. 2053885.

Many of them suffer from cancer, asthma, rashes, and other adverse health effects associated with the millions of pounds of toxic chemicals that Chevron's refinery and other nearby industrial facilities already release into the environment—even without the additional toxic chemical releases that Chevron's production of the new waste plastic chemicals would generate. Pet'r's Br. 19–21. As described by Cherokee Concerned Citizens member Barbara Weckesser, "[g]iven the unbearable pollution we already experience in our neighborhood, we cannot take the additional pollution and health threats that would come with the new chemical production at Chevron that EPA approved" in the challenged Order. Second Weckesser Decl. ¶ 18.

EPA now concedes that its Order is not legally defensible and should be invalidated. *See* Unopposed Mot. for Voluntary Remand 6, ECF No. 2076138 ("EPA Mot."); Decl. of Shari Barash ¶¶ 7–8 *in* Unopposed Mot. for Voluntary Remand, ECF No. 2076138. However, the parties disagree about whether the Order should remain in effect for an indeterminate period while EPA pursues a multi-step process for administratively withdrawing the Order—leaving Cherokee Concerned Citizens' members at risk of exposure to Chevron's toxic waste-plastic chemicals—or whether the Order should be remanded and vacated by the Court.

Cherokee Concerned Citizens does not oppose EPA's motion for voluntary remand. However, the Court should respond to EPA's motion by remanding *and vacating* the challenged Order. As explained below, vacatur is necessary to prevent Chevron from producing the waste plastic chemicals in reliance on EPA's indefensible Order during the pendency of EPA's administrative withdrawal process, and EPA has provided no justification for deviating from the default remedy of vacatur for unsustainable agency action.

## BACKGROUND

EPA issued the challenged Order under TSCA section 5, which requires EPA to review manufacturers' applications to produce new chemicals and then "prohibit or limit" the chemicals' production to the extent necessary to prevent any "unreasonable risk of injury to health or the environment"—including unreasonable risks to higher-risk populations such as people living near the facility where the chemicals will be produced. 15 U.S.C. § 2604(a), (e)–(f); *see* Procedures for Chemical Risk Evaluation Under the Toxic Substances Control Act (TSCA), 89 Fed. Reg. 37,028, 37,039–40 (May 3, 2024) (explaining that higher-risk subpopulations whose risks EPA must specifically evaluate and address under TSCA may include "fenceline communities in close proximity to facilities emitting air pollutants or living near effluent releases to water"). Where, as in the

challenged Order, EPA determines that "the information available . . . is insufficient to permit a reasoned evaluation of the health and environmental effects of the relevant chemical substance[s]" but the available information indicates that the chemicals "*may* present an unreasonable risk of injury to health or the environment," 15 U.S.C. § 2604(a)(3)(B)(i)–(ii)(I) (emphasis added); Petition for Review 14, EPA must issue an order under TSCA section 5(e) that regulates the chemicals as necessary to prevent any unreasonable risks "pending development of information" needed to rationally determine their full health and environmental risks, 15 U.S.C. § 2604(e). In other words, Congress placed the burden on chemical manufacturers either to (1) provide EPA with information that supports a reasoned determination that their new chemicals pose no unreasonable risks, or (2) submit to restrictions on the chemicals' production—including, where necessary, a ban—until the manufacturer develops information that supports a reasoned determination that the chemicals pose no unreasonable risks. *See id.*

The Order at issue turns this statutory mandate on its head. EPA concluded that it lacked sufficient information to rationally determine the full risks Chevron's waste plastic chemicals present, but found from the information available that the chemicals "may present an unreasonable risk of injury to health or the environment." Petition for Review 14. Indeed, based on the information before it,

4

EPA calculated levels of human health risk from exposure to the waste plastic chemicals that can only be described as shocking—including risks *thousands of times* higher than the agency's established benchmarks for identifying unreasonable risks. *See* Pet'r's Br. 13–14 (summarizing EPA risk calculations). Yet EPA did not use its authority under TSCA section 5(e) to establish *any* restrictions on the manufacturing, processing, or use of the waste plastic chemicals at Chevron's Pascagoula refinery to mitigate the risks to people living nearby, such as limits on Chevron's air emissions or wastewater discharges. *Id.* at 14–15; *see* Petition for Review 15–21. Further, despite identifying numerous data gaps that prevented EPA from characterizing the chemicals' full health risks, EPA did not require Chevron to develop *any* information about the chemicals' effects before allowing the company to commence production. *See* Petition for Review 23–24 (Order identifying ten categories of "Potentially Useful Information" that "would assist in evaluating the potential effects caused by these New Chemical Substances" but stating that "[t]he Company is not required to submit the 'Potentially Useful Information.'").

Cherokee Concerned Citizens filed its merits brief in this case on May 10, 2024, explaining that EPA's Order violates TSCA and should be vacated because (1) the Order imposes no restrictions on production or use of the waste plastic

chemicals to protect against the extreme health risks EPA identified for people living beyond the fenceline of Chevron's refinery; (2) the Order imposes no restrictions to protect against additional health risks from exposure to Chevron's waste plastic chemicals that EPA acknowledged but lacked sufficient information to characterize; and (3) EPA failed to evaluate or address the aggregate risks to people living near Chevron's refinery who will be exposed to the waste plastic chemicals in multiple ways—*i.e.*, from the chemical's manufacturing, processing, and use and through contaminated air, water, and fish. Pet'r's Br. 17–18, 48–62. On May 17, 2024, Environmental Defense Fund filed an amicus brief arguing, among other points, that EPA incorrectly asserted that it had overestimated the risks presented by the waste plastic chemicals when in fact it irrationally excluded multiple health risks from its assessment. *See* Br. of Env't Def. Fund as Amicus Curiae Supp. Cherokee Concerned Citizens 13–26, ECF No. 2055165.

Rather than defend its Order in response to those arguments, EPA now concedes that the Order should be invalidated based on (1) post-decisional EPA analysis that calls into question the agency risk assessment on which the Order depends and (2) deficiencies in the EPA analysis supporting the Order identified in the briefs filed by Cherokee Concerned Citizens and Environmental Defense Fund. EPA Mot. 6–7; Barash Decl. ¶¶ 5–8. However, EPA wishes to accomplish that

result through an administrative withdrawal of the Order rather than court-ordered vacatur. EPA Mot. 1, 6–7.

## ARGUMENT

Cherokee Concerned Citizens agrees with EPA that the Order should be invalidated. However, EPA is incorrect that "[v]acatur is not necessary." *Id.* at 6. The Order authorizes Chevron to commence production of the eighteen waste-plastic chemicals at any time. *See* Petition for Rev. 7. Accordingly, leaving the Order in effect while EPA pursues a multi-step administrative withdrawal process—for which EPA does not commit to any concrete timeline, *see* EPA Mot. 6; Barash Decl. ¶ 8—puts Cherokee Concerned Citizens' members at ongoing risk of exposure to the highly toxic chemicals that are the subject of the Order. *See* Pet'r's Br. 12–14, 19–21 (describing severe health risks associated with Chevron's waste plastic chemicals and the proximity of Chevron's production facility to the homes of Cherokee Concerned Citizens' members); *see also Wisconsin v. EPA*, 938 F.3d 303, 336 (D.C. Cir. 2019) (explaining that, in determining whether to vacate EPA action in conjunction with remand order, the Court considers the prospect of "harm to the public health or the environment").

EPA also ignores the established principle that "[v]acatur 'is the normal remedy' when [the Court is] faced with unsustainable agency action." *N.J.*

*Conservation Found. v. FERC*, 111 F.4th 42, 63 (D.C. Cir. 2024) (quoting *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 117 (D.C. Cir. 2020)). Only in "rare cases" will the Court remand an agency decision without vacatur so the agency can correct errors in the existing decision. *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019).

This is not the "rare case[]" in which remand without vacatur is justified. *Id.* To determine whether a rare departure from the default remedy of vacatur is warranted, this Court considers "(1) the likelihood that deficiencies in an order can be redressed on remand' and (2) 'the disruptive consequences of vacatur.'" *N.J. Conservation Found.*, 111 F.4th at 64 (quoting *Black Oak Energy v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013) (internal quotation omitted)); *see also Allied-Signal, Inc. v. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). EPA does not even attempt to address this standard, and neither factor supports the agency's position.

First, there is no prospect that the Order's deficiencies can be cured on remand. To the contrary, EPA concedes that invalidation of the Order is appropriate due to "substantial concerns that the [Order] may have been made in error." EPA Mot. 6. Accordingly, EPA disclaims any intention of attempting to rehabilitate the Order on remand. *See id.* ("On remand, EPA intends to withdraw

the order"); Barash Decl. ¶ 8(B)–(C) (explaining that, as part of its administrative

withdrawal process, on remand EPA intends to "issue a formal communication to

Chevron withdrawing its consent to the order," which will render the order "null

and void"). EPA acknowledges that, if it wishes to approve production of the waste

plastic chemicals in the future, EPA will have to conduct a "*de novo*" review of

Chevron's applications to produce those chemicals and issue an entirely separate

decision under TSCA section 5 based on an administrative record distinct from the

record supporting the challenged Order. Barash Decl. ¶ 8(D) & n.1. In short, by the

agency's own admission, this is not the rare case in which remand without vacatur

is justified "because [the] agency may be able to rehabilitate its [decision] on

remand." *Shands Jacksonville Med. Ctr. v. Azar*, 959 F.3d 1113, 1118 (D.C. Cir.

2020). To the contrary, because EPA admits that "it is far from certain that [the

agency] chose correctly" in issuing the challenged Order, "vacatur is appropriate."

*Env't Def. Fund v. FERC*, 2 F.4th 953, 976 (D.C. Cir. 2021) (quotation omitted);

*see* EPA Mot. 6 (explaining that the Order should be invalidated given "substantial

concerns that the [Order] may have been made in error").

That EPA disclaims any intention of trying to rehabilitate the Order on

remand is dispositive, as "the second *Allied-Signal* factor is weighty only insofar as

the agency may be able to rehabilitate its rationale for the [decision]" on remand.

*Comcast Corp. v. FCC*, 579 F.3d 1, 9 (D.C. Cir. 2009); *accord N.J. Conservation Found.*, 111 F.4th at 64–65. But even if the Court considers the second factor, it too favors vacatur because that remedy would have no disruptive consequences for EPA's regulatory program. *Allied-Signal*, 988 F.2d at 151. Indeed, vacatur is fully consistent with the result EPA wishes to pursue—invalidation of the Order—but would eliminate the risk that Cherokee Concerned Citizens' members may be exposed to Chevron's waste plastic chemicals during the pendency of an indeterminate administrative withdrawal process. Further, Chevron has not notified EPA that it is engaged in commercial production of the subject chemicals, so there is no indication that vacatur would disrupt the company's ongoing operations. *See* 40 C.F.R. § 720.102 (requiring such notice). Indeed, EPA does not point to any disruptive consequences from this Court's effectuating through vacatur the same ultimate outcome EPA itself seeks—invalidation of the Order—albeit more quickly and with less potential prejudice to Cherokee Concerned Citizens.

Finally, the Court has before it all the information it needs to independently validate EPA's "substantial concerns that the [Order] may have been made in error," EPA Mot. 6, including Cherokee Concerned Citizens' merits brief, Environmental Defense Fund's amicus brief, and the complete administrative record supporting the Order. Where, as here, the record and briefing establish

serious deficiencies in the challenged agency decision and the agency agrees its decision should be invalidated, there is no barrier to the Court's ordering vacatur in response to a motion for voluntary remand. *Cf.* Order, California v. EPA, No. 21-1035 (D.C. Cir. Apr. 5, 2021), ECF No. 1893155 (granting EPA motion for voluntary remand with vacatur prior to merits briefing) (attached as **Exhibit 1**); Resp't EPA's Unopposed Mot. for Voluntary Vacatur and Remand 13, California v. EPA, No. 21-1035 (D.C. Cir. filed Mar. 17, 2021), ECF No. 1890321 (explaining that the Court had "not yet set deadlines for merits briefing or argument" at the time EPA moved for voluntary remand with vacatur) (attached as **Exhibit 2**); Order, Env't Def. Fund v. EPA, No. 19-1222 (D.C. Cir. Apr. 5, 2021), ECF No. 1893133 (granting EPA motion for voluntary remand with vacatur prior to oral argument) (attached as **Exhibit 3**); Resp't's Consent Mot. for Voluntary Vacatur and Remand 11, Env't Def. Fund v. EPA, No. 19-1222 (D.C. Cir. filed Mar. 4, 2021), ECF No. 1888377 (explaining that the Court had received merits briefing but had not heard oral argument at the time EPA moved for voluntary remand with vacatur) (attached as **Exhibit 4**); *Bldg. Indus. Legal Def. Found. v. Norton*, 231 F. Supp. 2d 100, 102, 104–08 (D.D.C. 2002) (granting motion for remand and vacatur of agency rule before merits briefing).

For the foregoing reasons, Cherokee Concerned Citizens respectfully

requests that the Court grant EPA's motion for voluntary remand and order remand

*with vacatur*.

Respectfully submitted this 30th day of September, 2024.

/s/Katherine K. O'Brien
KATHERINE K. O'BRIEN
Earthjustice
P.O. Box 2297
South Portland, ME 04116
(212) 284-8036
kobrien@earthjustice.org

TOSH SAGAR
Earthjustice
1001 G St., NW, Ste. 1000
Washington, DC 20001
(202) 667-4500
tsagar@earthjustice.org

JONATHAN KALMUSS-KATZ
Earthjustice
48 Wall St., 19th Floor
New York, NY 10005
(212) 823-4989
jkalmusskatz@earthjustice.org

*Counsel for Petitioner*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the word limit of Fed. R.

App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by

Fed. R. App. P. 32(f), it contains 2,366 words. This document complies with the

typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared

in a proportionally spaced typeface using Microsoft Word version 2311 in 14-point

Times New Roman font.

/s/Katherine K. O'Brien
KATHERINE K. O'BRIEN
Earthjustice
P.O. Box 2297
South Portland, ME 04116
(212) 284-8036
kobrien@earthjustice.org

**Exhibit 1**

# 𝕌nited 𝕊tates 𝕮ourt of 𝕬ppeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 21-1035                                      September Term, 2020

EPA-86FR2542

**Filed On: April 5, 2021**

State of California, by and through Attorney
General Xavier Becerra and the California Air
Resources Board, et al.,

       Petitioners

   v.

Environmental Protection Agency,

       Respondent

------------------------------

Consolidated with 21-1036, 21-1063

      **BEFORE:**   Rogers and Wilkins, Circuit Judges, and Sentelle, Senior Circuit
                   Judge

## O R D E R

     Upon consideration of the unopposed motion for voluntary vacatur and remand, it is

     **ORDERED** that respondent's action in <u>Pollutant-Specific Contribution Finding for
Greenhouse Gas Emissions from New, Modified, and Reconstructed Stationary Sources:
Electric Utility Generating Units, and Process for Determining Significance of Other New
Source Performance Standards Source Categories</u>, 86 Fed. Reg. 2542 (Jan. 13, 2021), be
vacated, and these consolidated cases be remanded for further proceedings.

     Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is
directed to issue the mandate forthwith.

### Per Curiam

                                 **FOR THE COURT:**
                                 Mark J. Langer, Clerk

                 BY:   /s/
                         Manuel J. Castro
                         Deputy Clerk

**Exhibit 2**

ORAL ARGUMENT NOT YET SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

|  |  |  |
|---|---|---|
| STATE OF CALIFORNIA, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. 21-1035 (and |
| | ) | consolidated cases) |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

_____

**RESPONDENT EPA'S UNOPPOSED MOTION
FOR VOLUNTARY VACATUR AND REMAND**

Respondent the United States Environmental Protection Agency ("EPA")

hereby respectfully moves for remand with vacatur of its action entitled "Pollutant-

Specific Significant Contribution Finding for Greenhouse Gas Emissions From New,

Modified, and Reconstructed Stationary Sources: Electric Utility Generating Units,

and Process for Determining Significance of Other New Source Performance

Standards Source Categories." 86 Fed. Reg. 2542 (Jan. 13, 2021) ("Significant

Contribution Rule"). As discussed below and in the attached declaration, EPA

acknowledges that it failed to provide any public notice or opportunity for comment

on the central elements of the Significant Contribution Rule, rendering it unlawful.

*See* 42 U.S.C. § 7607(d).  Vacatur is warranted because the procedural defect here is clear, and, as discussed below and in the attached declaration, EPA does not presently intend to cure the defect through additional rulemaking.  Vacatur would also forestall needless judicial proceedings and would have no disruptive consequences.  Accordingly, EPA's request for vacatur should be granted.

Counsel for State and Municipal Petitioners states that they consent to the relief requested in light of EPA's clear failure to follow the notice and comment requirements in 42 U.S.C. § 7607(d) after determining that those requirements applied.  Counsel for Public Health and Environmental Petitioners likewise states that they consent to the relief requested.

## BACKGROUND

Clean Air Act Section 7607(d) establishes rulemaking procedures that govern EPA action under certain substantive sections of the Act.  *See* 42 U.S.C. § 7607(d).  This provision states that, among other things, EPA must provide a "notice of proposed rulemaking" that is published in the Federal Register and that must "specify the period available for public comment" on that proposal.  *Id.* § 7607(d)(3).  The rulemaking proposal must also include a "statement of [its] basis and purpose" describing the "factual data on which the proposed rule is based," the methodologies used to obtain and analyze the data, and "the major legal interpretations and policy considerations underlying the proposed rule."  *Id.* § 7607(d)(3)(A)-(C).  A final rule cannot be promulgated unless EPA has "allow[ed] any person to submit written

2

comments, data, or documentary information," *id.* § 7607(d)(5), and EPA must respond to significant public comments in its final rule, *id.* § 7607(d)(6)(B).  These requirements apply to a set of EPA actions listed under § 7607(d)(A)-(U), including EPA rules promulgating or revising any standard of performance under Section 7411 of the Clean Air Act, *id.* § 7607(d)(1)(C), as well as "such other actions as the Administrator may determine."  *Id.* § 7607(d)(1)(V).

Section 7411 of the Act requires EPA to list categories of stationary sources that the EPA Administrator finds in his or her judgment "cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare."  *Id.* § 7411(b)(1)(A).  This determination is typically understood to have two prongs: the "significant contribution" finding (concluding that the source category's emissions contribute significantly to air pollution), and the "endangerment" finding (concluding that such air pollution is dangerous).  Once a category is listed under Section 7411(b)(1)(A), EPA must issue "standards of performance" for new sources in the source category under 7411(b)(1)(B).  Those standards dictate a level of emission reduction based on the "best system of emission reduction" available to those facilities.  *See id.* § 7411(b)(1)(B) & (a)(1).

In 2015, EPA promulgated for the first time a set of new source performance standards for greenhouse gas emissions from new, modified, and reconstructed coal- and gas-fired power plants.  80 Fed. Reg. 64,510 (Oct. 23, 2015).  In that rule, EPA took the position that it had authority to issue such standards without making a new

significant contribution finding specifically for greenhouse gas emissions from the regulated sources because those sources comprised a source category that was already listed under Section 7411(b)(1)(A) as causing or contributing significantly to dangerous pollution. EPA explained that once it lists a source category, it may proceed to issue standards of performance for any individual pollutant under Section 7411(b)(1)(B), without being required to make an additional significant contribution finding for emissions of that pollutant. *See id.* at 64,529-30.

Even so, the 2015 rule also stated, in the alternative, that if Section 7411 were read to require that the Agency make a "pollutant-specific" significant contribution finding when issuing standards for a given pollutant under 7411(b)(1)(B) – in that case, a finding that power plants' emissions of greenhouse gas emissions *in particular* cause or contribute significantly to dangerous air pollution – then the "information and conclusions described [in the 2015 rule] should be considered to constitute the requisite [pollutant-specific finding]." *Id.* at 64,530. The Agency justified that finding on grounds that, among other things, greenhouse gas emissions from fossil-fuel-fired power plants "emit almost one-third of all U.S. [greenhouse gases] and comprise by far the largest stationary source category of [greenhouse gases] emissions." *Id.*

On April 4, 2017, EPA announced that it was reviewing the 2015 standards, 82 Fed. Reg. 16,329, and the judicial petitions for review of those standards were placed in abeyance. *See North Dakota v. EPA*, D.C. Cir. No. 15-1381, ECF No. 1688176. EPA issued a proposed rule to amend the 2015 standards for new, modified, and

4

reconstructed coal-fired power plants on December 20, 2018.  83 Fed. Reg. 65,424.
The proposal explained that EPA was considering amending those existing emissions
standards based on a different assessment of the "best system of emission reduction."
*Id.*

EPA also proposed to retain its 2015 interpretation that no additional,
pollutant-specific significant contribution finding was necessary to set emission
standards under Section 7411(b)(1)(B).  *Id.* at 65,432 n.25.  EPA noted, however, that
it would "consider comments" on "whether the EPA must make a new [significant
contribution] finding each time the Agency regulates an additional pollutant by an
already-listed source category."  *Id.*  EPA did *not* propose to interpret Section 7411 as
requiring the Agency to identify any threshold or criteria for determining when a
source category "causes, or contributes significantly," to dangerous air pollution.
Indeed, EPA did not even mention this legal interpretation.  EPA also did not
propose or mention any threshold or criteria – quantitative or qualitative – that it
might apply to this or other pollutant-specific significant contribution findings under
such an interpretation.  *See generally* 83 Fed. Reg. 65,424.

Then, on January 13, 2021, EPA issued the final Rule at issue here, the
Significant Contribution Rule.  In the Rule, EPA explained that it was not yet taking
action to finalize any of the substantive amendments it had proposed to the 2015
standards for coal-fired power plants.  86 Fed. Reg. at 2544.  Instead, the Rule
addressed the Section 7411 significant contribution finding for greenhouse gas

emissions from fossil-fuel-fired power plants.  First, the Rule promulgated a numerical threshold and associated criteria for determining which source categories' greenhouse gas emissions "contribute significantly" to endangerment.  *Id.* at 2551-56.  Specifically, the Rule stated that source categories whose emissions of greenhouse gases are 3 percent or less of U.S. greenhouse gas emissions are deemed to contribute *in*significantly to dangerous air pollution and so their greenhouse gas emissions cannot be regulated under Section 7411.  *Id.* at 2552-53.  For source categories emitting more than 3 percent of domestic emissions, their emissions could still be deemed insignificant – and so exempt from regulation – upon assessment of "secondary" criteria like the size of the source category's emissions as compared to global emissions from that same source category.  *Id.* at 2554-55.  None of this had been discussed in the proposed rule.

Second, the Rule applied that new threshold and used it to affirm EPA's previous conclusion (in the alternative) that power plants' emissions of greenhouse gases alone "cause, or contribute significantly," to dangerous air pollution – applying a "pollutant-specific" reading of Section 7411 that EPA had recently adopted in a separate Section 7411 rule for oil and gas sources.  *Id.* at 2555-57.  EPA explained that greenhouse gas emissions from this source category "cause, or contribute significantly," to dangerous air pollution, and thus are subject to new source performance standards under Section 7411, because fossil-fuel-fired power plants constitute 27 percent of domestic greenhouse gas emissions – well over the 3-percent

threshold. *Id.* at 2556. But the Rule announced that the new criteria barred EPA from establishing new source performance standards for all other source categories that emit greenhouse gases (like oil and gas production facilities, petroleum refineries, and boilers) because their emissions are 3 percent or less of total U.S. greenhouse gas emissions. *Id.* at 2552.

EPA also determined that the Rule was subject to the procedural requirements of Section 7607(d) of the Clean Air Act, as it fell within the scope of Section 7607(d)(1)(V). *Id.* at 2544.

Two petitions for review have been filed. The Court has not yet set a schedule for merits briefing.

## ARGUMENT

In appropriate circumstances, this Court has discretion to vacate agency actions prior to full briefing on the merits, and the Court's exercise of this authority is warranted here. Vacatur of the Significant Contribution Rule is appropriate because the Rule is subject to the procedural requirements of Clean Air Act Section 7607(d), but EPA acknowledges that the "significant contribution" criteria promulgated in the Rule were never proposed or otherwise subject to public notice and comment in any respect, as required by Section 7607(d)(3), 42 U.S.C. § 7607(d)(3). This acknowledged failure renders the Rule plainly unlawful. Because, as explained below, EPA does not presently wish to remedy this clear procedural defect, an order vacating the Rule is appropriate and in the interests of justice.

As this Court recently explained, "vacatur is the normal remedy for a procedural violation, although we may remand to the agency without vacatur based on the seriousness of the order's deficiencies and the likely disruptive consequences of vacatur." *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020) ("*NRDC*") (internal quotation marks and citation omitted). Where an agency has not provided any opportunity for public notice and comment at all, the seriousness of the deficiency is patent and vacatur is typically appropriate. "[T]he entire premise of notice-and-comment requirements is that an agency's decisionmaking may be affected by concerns aired by interested parties through those procedures." *Id.* Accordingly, "the court typically vacates rules when an agency 'entirely fail[s]' to provide notice and comment." *Daimler Trucks N. Am. LLC v. EPA*, 737 F.3d 95, 103 (D.C. Cir. 2013) (quoting *Shell Oil Co. v. EPA*, 950 F.2d 741, 752 (D.C. Cir. 1991)) (vacating an EPA final rule where the proposed rule failed to provide notice of the adopted amendments); *NRDC*, 955 F.3d at 85 ("[F]ailure to provide the required notice and to invite public comment . . . is a fundamental flaw that normally requires vacatur of the rule." (quoting *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009)); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1052 (D.C. Cir. 2021) ("[A]n agency that bypassed required notice and comment rulemaking obviously could not ordinarily keep in place a regulation while it completed that fundamental procedural prerequisite.").

8

EPA's acknowledged failure to provide any public notice or comment on the Significant Contribution Rule is this type of serious deficiency.  The Clean Air Act requires EPA to publish a proposed rule whenever EPA sets standards of performance under Section 7411 or promulgates "such other actions as the Administrator may determine."  42 U.S.C. § 7607(d)(3), (d)(1)(C), (d)(1)(V).  That proposal must describe "the factual data on which the proposed rule is based; the methodology used in obtaining the data and in analyzing the data; and the major legal interpretations and policy considerations underlying the proposed rule."  *Id.* § 7607(d)(3)(A)-(C).  And EPA must accept and respond to public comments on the proposed data, methodologies, and interpretations.  *Id.* § 7607(d)(5), (d)(6)(B).

Here, EPA acknowledges that it issued this final Rule without observing any of these requirements, despite the Administrator's determination that this Rule was subject to the requirements in Section 7607(d).  Decl. of Acting Assistant Administrator Joseph Goffman ¶¶ 9-13 ("Goffman Decl."); 86 Fed. Reg. at 2544.  Nothing in the proposed rule discusses or even hints at the binding legal interpretation provided in the final Rule.  Moreover, EPA acknowledges that it also failed to undertake significant analyses relevant to the underlying legal and factual questions.  Goffman Decl. ¶¶ 17-19.  The Agency's acknowledged failure to weigh relevant data and potential objections to proposed significance criteria in any respect before finalizing them is precisely the sort of error that casts serious, insurmountable "doubt" on "whether the agency chose correctly" when reaching the conclusions

advanced in this Rule. *See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993) (noting that the "seriousness" of a rule's "deficiencies" reflects "the extent of doubt whether the agency chose correctly").

Vacatur is also warranted because the Agency does not wish to cure the procedural defect at this juncture. Goffman Decl. ¶ 15. Instead, as explained in the declaration – and consistent with Executive Order 13990 directing EPA to review and, if appropriate, revise or rescind the Significant Contribution Rule at issue here – EPA wishes to undertake a wholesale reexamination of the legal interpretations advanced in this Rule. Goffman Decl. ¶ 16; *see* Executive Order 13990, 86 Fed. Reg. 7037 (Jan. 25, 2021).

Even if EPA were to conclude that pollutant-specific significance criteria were appropriate, the Agency still would not intend to proceed with re-proposal of the existing Significant Contribution Rule. Goffman Decl. ¶ 17. Important substantive analyses were not performed before the Rule was promulgated, and would need to be conducted in the event EPA were to seek to re-promulgate these or other significance criteria. *Id.* This would include new analyses weighing the level of stationary source greenhouse gas emissions EPA should address to appropriately mitigate the public health and welfare impacts of greenhouse gas emissions, and, depending on those analyses, work to develop comprehensive estimates of the greenhouse gas emissions of other source categories listed under Section 7411. Goffman Decl. ¶¶ 18-19; *cf. Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 347 (D.C. Cir. 1989) ("The proper

course in a case with an inadequate record is to vacate the agency's decision and to

remand the matter to the agency for further proceedings.").  Given the depth and

breadth of the review to be conducted, and the substantial possibility that the review

may change the Agency's approach to the questions presented in the Rule, EPA does

not plan to simply re-propose the existing Significant Contribution Rule.  Goffman

Decl. ¶¶ 15-17.  Where a serious procedural defect will not be cured by remand

without vacatur, remand with vacatur is appropriate.  *See NRDC*, 955 F.3d at 85 ("In

general, vacatur is the normal remedy for a procedural violation, although we may

remand to the agency without vacatur based on the seriousness of the order's

deficiencies and the likely disruptive consequences of vacatur." (internal quotation

marks and citation omitted)).

Vacatur is further warranted because it would have no "disruptive

consequences."  *See id.*; *Allied-Signal*, 988 F.2d at 150-51; *see also Am. Bankers Ass'n v.*

*Nat'l Credit Union Admin.*, 934 F.3d 649, 674 (D.C. Cir. 2019), *cert. denied*, 141 S. Ct. 160

(2020) ("A strong showing of one [vacatur] factor may obviate the need to find a

similar showing of the other." (citing *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027,

1049 (D.C. Cir. 2002)).  The Significant Contribution Rule "re-affirmed" that fossil-

fuel-fired power plants are appropriately regulated under Section 7411 and did not

alter the standards themselves.  Consequently, vacatur of the Significant Contribution

Rule – including the new significant contribution finding made therein – would have

no effect on existing regulation of the source category.  Goffman Decl. ¶ 20.  And the

11

significance criteria have not yet been applied to any other source category's greenhouse gases emissions, so no other performance standards would be affected by their retraction.  Goffman Decl. ¶ 21.

Moreover, none of the other disruptive consequences that traditionally counsel in favor of remand without vacatur are present here.  Specifically, no deleterious effects on public health and the environment would result from vacatur, and there are few (if any) reliance interests on this Rule given its recent promulgation.  *See, e.g.*, *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1312 (D.C. Cir. 1991) (declining to vacate a rule issued without proper notice-and-comment procedures because it "may affect the EPA's ability to respond adequately to serious safety hazards"); *see also Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020) ("[A]lthough remand without vacatur remains an exceptional remedy, we have held that it is appropriate when vacatur would disrupt settled transactions.").  Here, the longstanding regulatory regime will remain in place even after vacatur of this Rule.  The standards to reduce the source category's emissions of harmful greenhouse gases will be unaffected by vacatur.  Indeed, in the Agency's view, remanding the Rule *without* vacatur would have the most disruptive and deleterious consequences for public health and the environment, as it would leave in place a statutory interpretation constraining any further regulation of greenhouse gas emissions under Section 7411, even though that interpretation was promulgated without proper observance of law.  Goffman Decl. ¶ 22.  Likewise, those parties that might support the legal interpretation or criteria put

forward in the Significant Contribution Rule lack any reliance interests on the Rule because it has been in effect less than a week.  86 Fed. Reg. at 2542.

Nor will remand with vacatur have any disruptive consequences for the Court or the parties to this litigation.  This matter is still at a nascent stage.  The Court has not yet set deadlines for merits briefing or argument.  And Petitioners consent to vacatur.

Because the procedural error here is patent and serious, and because vacatur will have no disruptive consequences, the Significant Contribution Rule should be vacated and remanded to EPA.

## CONCLUSION

For the foregoing reasons, EPA respectfully requests that the Court: (1) grant this motion and issue an order vacating and remanding the Rule entitled, "Pollutant-Specific Significant Contribution Finding for Greenhouse Gas Emissions From New, Modified, and Reconstructed Stationary Sources: Electric Utility Generating Units, and Process for Determining Significance of Other New Source Performance Standards Source Categories,"  86 Fed. Reg. 2542 (Jan. 13, 2021); and (2) dismiss as moot the above-captioned consolidated petitions for review, Nos. 21-1035, 21-1036, and 21-1063.

Respectfully submitted,

JEAN E. WILLIAMS
Acting Assistant Attorney General

13

DATED:  March 17, 2021          /s/ *Chloe H. Kolman*
                                CHLOE H. KOLMAN
                                U.S. Department of Justice
                                Environmental Defense Section
                                P.O. Box 7611
                                Washington, D.C. 20044
                                (202) 514-9277
                                chloe.kolman@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Motion for Voluntary Vacatur and Remand complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that the foregoing complies with the type-volume limitation of Fed. R. App. P. 27(2)(A) because it contains approximately 3,008 words, excluding exempted portions, according to the count of Microsoft Word.

/s/ *Chloe H. Kolman*
CHLOE H. KOLMAN


**CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing Motion for Voluntary Vacatur and Remand have been served through the Court's CM/ECF system on all registered counsel this 17th day of March, 2021.

/s/ *Chloe H. Kolman*
CHLOE H. KOLMAN

**Exhibit 3**

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 19-1222

September Term, 2020

EPA-84FR44547

Filed On: April 5, 2021

Environmental Defense Fund,

        Petitioner

    v.

Environmental Protection Agency,

        Respondent

------------------------------

Consolidated with 19-1227

**BEFORE:**    Rogers and Wilkins, Circuit Judges, and Sentelle, Senior Circuit Judge

### O R D E R

Upon consideration of respondent's motion for voluntary vacatur and remand and the response in support thereof, it is

**ORDERED**, on the court's own motion, that these consolidated cases be removed from abeyance.  It is

**FURTHER ORDERED** that the motion for voluntary vacatur and remand be granted. Respondent's action in Adopting Requirements in Emission Guidelines for Municipal Solid Waste Landfills, 84 Fed. Reg. 44547 (Aug. 26, 2019), is hereby vacated and these consolidated cases are remanded for further proceedings.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to issue the mandate forthwith.

### Per Curiam

                            FOR THE COURT:
                            Mark J. Langer, Clerk

                  BY:    /s/
                            Manuel J. Castro
                            Deputy Clerk

**Exhibit 4**

ORAL ARGUMENT NOT SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

|  |  |  |
|---|---|---|
| ENVIRONMENTAL DEFENSE FUND, | ) ) ) ) | |
| *Petitioner*, | ) ) | Case No. 19-1222 Consolidated with 19-1227 |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) | |
| *Respondent*. | ) ) ) | |

_____

**RESPONDENT'S CONSENT MOTION FOR VOLUNTARY
VACATUR AND REMAND**

In response to the Court's order of February 5, 2021 requiring a motion or

motions to govern further proceedings to be filed by March 4, 2021, Respondent

the United States Environmental Protection Agency ("EPA") respectfully moves

the Court to issue an order vacating and remanding the EPA Clean Air Act rule

that was the subject of merits briefing in this case. As further explained below,

vacatur and remand is appropriate because of an intervening decision of this

Court in *American Lung Association v. EPA*, 985 F.3d 914 (D.C. Cir. 2021).

EPA has met and conferred telephonically with the Petitioners regarding its intent to file this motion.  All Petitioners confirmed through counsel that they consent to the relief requested by this motion.  The Petitioners plan to file a response concurring in this motion and supporting the same relief.

## BACKGROUND

These petitions challenge EPA's final rule entitled, "Adopting Requirements in Emission Guidelines for Municipal Solid Waste Landfills," 84 Fed. Reg. 44,547 (Aug. 26, 2019) (the "Alignment Rule" or "Rule").  Petitioner Environmental Defense Fund filed a petition for review of the Rule on October 23, 2019 (Case No. 19-1222).  The remaining Petitioners—the States of California, by and through Attorney General Xavier Becerra and the California Air Resources Board, Illinois, Maryland, New Jersey, New Mexico, Oregon, Rhode Island, and Vermont, and the Commonwealth of Pennsylvania—filed a petition for review of the Rule on October 25, 2019 (Case No. 19-1227).  The petitions were consolidated, and the parties completed merits briefing on December 11, 2020.  Oral argument initially was scheduled for February 22, 2021, but was later taken off the calendar at EPA's unopposed request.  ECF Docs. 1879430 (Order dated Jan. 11, 2021), *and* 1884027 (*Per Curiam* Order dated Feb. 5, 2021).

The following sections provide relevant statutory and regulatory background and summarize the intervening events that preceded this motion.

### A.      Statutory and Regulatory Background

The Clean Air Act, 42 U.S.C. §§ 7401-7671q ("CAA" or the "Act"), establishes a comprehensive program for controlling and improving the Nation's air quality. *NRDC v. Gorsuch*, 685 F.2d 718, 720-21 (D.C. Cir. 1982). Section 7411 "directs the EPA Administrator to list 'categories of stationary sources' that 'in his judgment . . . caus[e], or contribut[e] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare.'" *American Elec. Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) (alterations in original), *quoting* 42 U.S.C. § 7411(b)(1)(A).

Section 7411 addresses both new (or modified) and existing stationary sources, setting forth two distinct approaches for regulating their air pollutant emissions. For new (or modified) sources, Section 7411 gives the default role as regulator to EPA. It requires the agency to establish, by regulation, "Federal standards of performance." 42 U.S.C. § 7411(b)(1). States "may" submit procedures pursuant to which EPA would delegate to the state authority to implement and enforce those performance standards. *Id.* § 7411(c)(1). But for existing sources, Section 7411(d) contemplates that states will take the leading role. It directs EPA to establish by regulation a procedure under which "each

state shall submit" a plan to implement and enforce standards for certain existing sources.  *Id.* § 7411(d)(1).  Thus, Section 7411(d) allows "each State to take the first cut at determining how best to achieve EPA emissions standards within its domain."  *American Elec. Power*, 564 U.S. at 428.

EPA issued its first implementing regulations for Section 7411(d) in 1975. 40 Fed. Reg. 53,340 (Nov. 17, 1975).  Under the 1975 regulations, states had to submit plans within 9 months after EPA published new emission guidelines for existing sources.  *Id*. at 53,340-41.  EPA was required to approve or disapprove submitted plans within four months of the submission deadline, and to promulgate a federal plan within six months of the submission deadline for those states without an approved plan.  *Id.* at 53,341.

In 1996, EPA promulgated first-time Section 7411(d) emission guidelines for existing municipal solid waste landfills (hereinafter, "landfills").  61 Fed. Reg. 9905 (Mar. 12, 1996).  These guidelines generally provided that state plans should require any landfill emitting more than 50 megagrams annually of certain air pollutants to install control technology.  In 2016, EPA amended these emission guidelines by, *inter alia*, lowering the emissions threshold to 34 megagrams per year.  81 Fed. Reg. 59,276 (Aug. 29, 2016) ("2016 rule" or "Landfill Guidelines").   The 2016 rule incorporated a textual cross-reference to the implementing regulations for Section 7411(d) that EPA had promulgated in

1975 as described above.  81 Fed. Reg. at 59,286, *citing* 40 C.F.R. § 60.23.

Consistent with the timing provisions in those implementing regulations, the

2016 rule established a state plan submission deadline of May 30, 2017 (*i.e.*, nine

months following promulgation), and required EPA approval or disapproval

action and, as necessary, federal plan promulgation within the same timing

intervals that EPA had established in the 1975 implementing regulation.  *See* 81

Fed. Reg. at 59,286, 59,313.

 EPA promulgated new implementing regulations for Section 7411(d) on

July 8, 2019.  84 Fed. Reg. 32,520, 32,564 (the "Implementing Regulations

Rule").  In that rule, EPA concluded that "[g]iving states three years to develop

state plans is more appropriate than the nine months provided for under the

existing implementing regulations." *Id.* at 32,564.  The Implementing

Regulations Rule also adopted longer intervals for EPA to review and approve or

disapprove a state plan submission under Section 7411(d) (12 months following a

completeness determination), and to promulgate a federal Section 7411(d) plan

where it finds that a state failed to submit a plan, finds that the submission is

incomplete, or disapproves the plan (two years following such a finding or

disapproval).  *Id.*  EPA elected to apply these new timing requirements "to both

emission guidelines published after the new implementing regulations are

finalized and to all ongoing emission guidelines already published" under Section 7411(d). *Id.*

Shortly after promulgating the Implementing Regulations Rule, EPA promulgated the Alignment Rule, which amended the timing provisions of the Landfill Guidelines. 84 Fed. Reg. 44,547 (Aug. 26, 2019). The preamble to the Alignment Rule expressly referred to and relied on the Implementing Regulations Rule, which EPA noted had applied new timing requirements "not just to [emission guidelines] published after the new implementing regulations are finalized, but also to ongoing [emission guidelines] already published under CAA section 111(d)," such as the Landfill Guidelines. 84 Fed. Reg. at 44,549, *citing* 84 Fed. Reg. at 32,564-65 and 32,575. The Alignment Rule incorporated, by cross-reference to the provisions promulgated in the Implementation Regulations Rule, each of the same extended intervals for state plan submission, EPA review and action thereon, and federal plan promulgation that appeared in the Implementing Regulations Rule. *Id.* at 44,549. EPA's explanation of the rationale for its final action in the Alignment Rule, and its responses to comments on the proposed rule, were consistent with and mostly identical to justifications EPA had provided in support of the Implementing Regulations Rule. *See, e.g.,* Final Brief for Respondents, ECF Doc. 1875483 (filed Dec. 11, 2020), at 10-14 (providing background summary of the rationales asserted in the proposed and

final Implementing Regulations Rule and Alignment Rule and asserting that the two were consistent).

### B.     The Court's Decision in *American Lung* Vacating the Implementing Regulations Rule's Timing Provisions

After the parties had submitted final merits briefs in this case and the Court had scheduled oral argument, the Court issued its opinion in *American Lung, supra,* on January 19, 2021.  *American Lung* vacated the timing provisions of the Implementing Regulations Rule.  *See* 985 F.3d at 991-95.   As noted above, these provisions had extended the timelines for state plan submissions, EPA's review of state plans, and EPA's promulgation of federal plans to implement emission guidelines issued under Section 111(d).  *Id.* at 991.  The Court found these extended timing intervals unlawful because EPA "failed to justify substantially extending established compliance timeframes." *Id.* at 992.  Moreover, the Court found that EPA's analysis failed to take into account essential factors, due to what the Court described as a "total disregard of the added environmental and public health damage likely to result from slowing down the entire Section 7411(d) regulatory process."  *Id.* at 993.  In the Court's view, EPA's justification for the extended timing intervals in the Implementing Regulations Rule "offered undeveloped reasons of administrative convenience and regulatory symmetry, even as it ignored the environmental and public health effects of the Rule's compliance slowdown.  The EPA thus 'failed to consider an important aspect of

the problem' . . . indeed, arguably the most important aspect." *Id.* at 995, *quoting*

*Motor Vehicle Mfrs' Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 43 (1983)*.* The Court "accordingly vacate[d] the [Implementing

Regulations Rule's] extensions of the Section 7411(d) compliance periods." 985

F.3d at 995. The Court later stayed a portion of its mandate in *American Lung*

*Association* pertaining to a separate rule found unlawful, and directed the Clerk to

issue, in the normal course, a "partial mandate" that includes "vacatur of the

challenged timing provisions within the implementing regulations." Order dated

Feb. 22, 2021 in *American Lung, supra*, ECF Doc. 1886386.

### C.    Other Intervening Events Subsequent to Merits Briefing

Following merits briefing and the Court's order scheduling oral argument

in this case, a Presidential transition occurred. On January 20, 2021, President

Biden issued an Executive Order that directed the heads of federal agencies (in

this case EPA) to conduct an immediate review of any agency regulation or

similar agency action promulgated between January 20, 2017, and January 20,

2021, that may affect health and the environment, including specifically

regulations relating to clean air as governed by the Act. *See* Exec. Order 13990

of January 20, 2021, "Protecting Public Health and the Environment and

Restoring Science To Tackle the Climate Crisis," 86 Fed. Reg. 7037 (Jan. 25,

2021), §§ 1, 2(a). That Order further authorized the Attorney General to, as

appropriate, request a court to stay proceedings challenging actions such as those identified in the Executive Order. *Id.* § 2(d). In a list of agency actions accompanying the Executive Order, the President specifically identified the rule challenged here as falling within the scope of the Executive Order, requiring that it be reviewed "in accordance with the Executive Order: 'Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis.'" *See* "Fact Sheet: List of Agency Actions for Review," at "U.S. Environmental Protection Agency" § 40.[1]

EPA subsequently wrote two letters communicating new intentions relating to this litigation and the Rule, respectively. First, on January 21, 2021, EPA's acting General Counsel issued a letter to the acting Deputy Assistant Attorney General for the Environmental & Natural Resources Division of the Department of Justice ("DOJ") requesting that, pursuant to the Executive Order, DOJ seek abeyances or stays of proceedings in pending challenges to EPA regulations promulgated between January 20, 2017, and January 20, 2021, or other forms of procedural relief as appropriate in particular cases. As explained above, the Alignment Rule expressly is subject to the Executive Order.

---

[1] Copies of the Executive Order, the Fact Sheet, and the two EPA letters discussed *infra* were attached to EPA's motion to continue oral argument in this case, ECF Doc. 1883408.

Second, on February 1, 2021, EPA Acting Assistant Administrator Joe Goffman sent a letter to counsel for the Petitioners in this case identifying an administrative action that EPA intends to take. Previously, EPA had published a notice in the Federal Register identifying a number of states as having failed to make a complete plan submission to satisfy the requirements of the Landfill Guidelines. 85 Fed. Reg. 14,474, 14,476 (Mar. 12, 2020). As communicated by the February 1, 2021 letter, EPA intends to issue a federal plan by May 2021 for any state that does not have an approved state plan implementing the Guidelines. EPA proposed a federal plan in August 2019. 84 Fed. Reg. 43,745 (Aug. 22, 2019).

Consistent with the President's Executive Order and the request from EPA's acting General Counsel, the Justice Department moved on February 2, 2021, to continue the oral argument for 45 days as noted above. ECF Doc. 1883408. The Court responded by granting the motion, removing this case from the argument calendar, and requiring a motion or motions to govern further proceedings to be filed no later than March 4, 2021. *Per Curiam* Order dated Feb. 5, 2021, ECF Doc. 1884027.

## ARGUMENT

Having completed an evaluation of the Alignment Rule consistent with the Executive Order and in light of the opinion in *American Lung*, EPA now seeks

vacatur and remand of the Rule as the appropriate procedure to resolve this litigation.  In appropriate circumstances, this Court has discretion to grant requests for voluntary vacatur and remand even prior to full briefing on the merits, or where, as here, the parties fully briefed the merits, but the Court did not hear oral argument.  *See, e.g., Sierra Club v. EPA*, 705 F.3d 458, 463-66 (D.C. Cir. 2013).

An agency normally may not repeal a rule without providing an opportunity for public notice and comment.  *See* 42 U.S.C. § 7607(d) (establishing procedural requirements that apply to certain CAA rules); *see also* 5 U.S.C. § 553 (Administrative Procedure Act notice-and-comment requirements). However, where, as here, an agency concedes that an action under review is legally invalid, and the Court agrees, administrative notice-and-comment requirements in no way preclude a court from granting vacatur.  *See, e.g., Sierra Club,* 705 F.3d at 463-66 (agreeing to vacate and remand concededly flawed portions of a rule); *Bldg. Indus. Legal Def. Found. v. Norton*, 231 F. Supp. 2d 100, 108 (D.D.C. 2002) (granting request for voluntary vacatur); *Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236 (D. Colo. 2011) (same); *see also, e.g.*, *Home Builders Ass'ns of N. Cal. v. Norton*, 293 F. Supp. 2d 1, 5 (D.D.C. 2002) (approving consent decree vacating agency action).

Whether vacatur, in addition to remand, is appropriate depends in large part on whether the agency might be able to justify the challenged rule or agency action on remand. *See Allied-Signal, Inc. v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). A further consideration is whether vacatur would have "disruptive consequences." *Id.* at 150.

In this case, given the Court's conclusions in *American Lung* regarding the inadequacy of EPA's justifications for the Implementing Regulations Rule's extended timing intervals, and the degree to which the Alignment Rule relied on largely the same justifications to incorporate those same invalidated timing interval provisions into the Landfill Guidelines, it is clear that vacatur of the Alignment Rule an appropriate course of action. In particular, as described above, the Court found that EPA failed to consider the environmental and public health impacts of slowing down the compliance timeframe in the Implementing Regulations Rule, and "thus 'failed to consider an important aspect of the problem.'" *American Lung*, 985 F.3d at 995, *quoting State Farm*, 463 U.S. at 43.

In the Alignment Rule, EPA did not give substantially greater consideration to the environmental or public health impacts of slowing down the compliance timeframe than it had in the Implementing Regulations Rule. Instead, EPA characterized the Alignment Rule as merely "a procedural change" and further asserted its "impacts cannot be characterized due to inherent uncertainties

and are likely to be minimal." 84 Fed. Reg. at 44,554. EPA's merits brief in this case took the position that its treatment of this issue during the Alignment Rule rulemaking—which did not differ substantially from its treatment of the issue in promulgating the Implementing Regulations Rule—satisfied the arbitrary and capricious standard. *See* Final Brief for Respondents at 43-54. But, the Court's opinion in *American Lung* squarely holds otherwise. 985 F.3d at 995.

Furthermore, vacatur is more practical in the context of this case, from an administrative perspective, than remand without vacatur would be. As described above, the Alignment Rule incorporated the timing provisions of the Implementing Regulations Rule by cross-referencing them. The Court has now ordered, in *American Lung*, the vacatur of the Implementing Regulations Rule's timing provisions, which will render the Alignment Rule's cross-referencing language a null set. In these circumstances, vacating the Alignment Rule makes more sense than remanding it to EPA in its current form.

Finally, there are no "disruptive consequences" presented here that would counsel in favor of remand without vacatur. Specifically, no deleterious effects on public health and the environment would result from vacatur. Moreover, EPA already has announced its intention to issue a federal plan by May 2021 for any state that does not have an approved state plan implementing the Landfill Emission Guidelines, and vacating the Alignment Rule would not alter or delay

EPA's process for issuing such a plan.  Accordingly, vacatur of the Alignment Rule is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and issue an order vacating and remanding the Alignment Rule.

Respectfully submitted,

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment & Natural Resources Div.

Dated:  March 4, 2021          By:          /s/ *Brian H. Lynk*_____
BRIAN H. LYNK, D.C. Bar. No. 459525
Environmental Defense Section
P.O. Box 7611
Washington, DC  20044
(202) 514-6187 (tel.)
Attorney for Respondent

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the requirements of Fed.

R. App. P. Rule 27(d)(2) because it contains 2,800 words according to the count

of Microsoft Word and therefore is within the word limit of 5,200 words.

Dated:  March 4, 2021                                    */s/ Brian H. Lynk*
                                                          Brian H. Lynk

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed with the Clerk of the Court this 4th of March, 2021, using the appellate CM/ECF System, causing true and correct copies thereof to be sent to all counsel of record through the appellate CM/ECF system.

*/s/ Brian H. Lynk*
Brian H. Lynk